Devonté B. Harris #P73399
Name and Prisoner Booking Number

CSP-Corcoran
Place of Confinement

P.O. Box 3476 4A-4L-23
Mailing Address

Corcoran, Ca 93212
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

Devonté Bernard Harris        )
(Full Name of Plaintiff)           )
                   Plaintiff,       )
                                          )
         v.                              )   CASE NO.  1:17-cv-01752 EPG (PC)
                                          )              (To be supplied by the Clerk)
(1) Consuelo Martin          )
(Full Name of Defendant)         )
                                          )
(2) Carlos Munoz              )
                                          )   **CIVIL RIGHTS COMPLAINT**
(3) Robert Zamora             )   **BY A PRISONER**
                                          )
(4) Timothy Candia            )
                   Defendant(s).    )   ☑ Original Complaint
☑ Check if there are additional Defendants and attach page 1-A listing them    )   ☐ First Amended Complaint
                                          )   ☐ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☑ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).
   ☐ Other: _____

2. Institution/city where violation occurred: California State Prison-Corcoran.

Revised 3-15-2016                                   1

A-1. DEFENDANTS (continued)

(5) Alfred J. Hernandez

(6) Jami Bowechop

## B. DEFENDANTS

1. Name of first Defendant: _Consuelo Martin_. The first Defendant is employed as: _Correctional officer_ at _CSP Corcoran_
   (Position and Title)                    (Institution)

2. Name of second Defendant: _Carlos Munoz_. The second Defendant is employed as: _Leiutenant_ at _CSP- Corcoran_
   (Position and Title)                    (Institution)

3. Name of third Defendant: _Robert Zamora_. The third Defendant is employed as: _Correctional officer_ at _CSP- Corcoran_
   (Position and Title)                    (Institution)

4. Name of fourth Defendant: _Timothy Candia_. The fourth Defendant is employed as: _Seargent_ at _CSP- Corcoran_
   (Position and Title)                    (Institution)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?   ☑ Yes    ☐ No

2. If yes, how many lawsuits have you filed? _____. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: _Harris_ v. _Thom, et al_
      2. Court and case number: _CV-09-0100; N.D. Cal_
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _Defendants granted summary judgement_

   b. Second prior lawsuit:
      1. Parties: _Harris_ v. _Gardner, et al_
      2. Court and case number: _C-09-04037; N.D. Cal,_
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _Defendants granted summary judgement_

   c. Third prior lawsuit:
      1. Parties: _Harris_ v. _Florel, et al_
      2. Court and case number: _CV-10-5231; N.D. Cal_
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _Dismissed for failure to prosecute_

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

B. DEFENDANTS (continued)

5. Alfred J. Hernandez is employed as a Correctional Officer at CSP-Corcoran.

6. Jami Bowechop is employed as a Correctional officer at CSP-Corcoran.

C. PREVIOUS LAWSUITS (continued)

d. Fourth prior lawsuit:
 1. Harris v. Davis, et al
 2. N.D. Cal; Case No. C-08-05631
 3. Defendants granted summary judgement

e. Fifth prior lawsuit:
 1. Harris v. Higgins, et al.
 2. E.D. Cal; Case No. 2:08-CV-01711
 3. Pending

f. Sixth prior lawsuit:
 1. Harris v. Zamudio, et al.
 2. E.D. Cal; Case No. CIV-S-09-1523
 3. Voluntary dismissal

g. Seventh prior lawsuit:
 1. Harris v. Gardner, et al.
 2. Del Norte County; Case No. CVW10-1076
 3. Defendants granted judgement on pleadings

h. Eigth prior lawsuit:
 1. Harris v. Recek, et al
 2. Kings County; Case No. 11C0218
 3. Demurrer sustained

C. PREVIOUS LAWSUIT (continued)

i. Ninth prior lawsuit:
1. Harris v. Roberts, et al
2. Kings County; Case No. 11-CV-1114
3. Demurrer sustained

j. Tenth prior lawsuit:
1. Harris v. Peakheart, et al.
2. Los Angeles County; Case No. BC-489274
3. Defendant granted judgement on pleadings

k. Eleventh prior lawsuit:
1. Harris v. Staggs, et al
2. Kings County; Case No. 13 C 0186
3. Defendants granted judgement on pleadings

l. Twelfth prior lawsuit:
1. Harris v. German, et al
2. E.D. Cal; Case No. 1:15-CV-01462-GSA
3. Pending

m. Thirteenth prior lawsuit:
1. Harris v. Velo-Lopez
2. E.D. Cal; Case No. 1:15-CV-01629-MJS
3. Voluntary dismissal

n. Fourteenth prior lawsuit:

C. PREVIOUS LAWSUIT (continued)

   1. Harris v. Mascerenas, et al
   2. E.D. Cal; Case No. 1:16-cv-01158-BAM
   3. Voluntary dismissal

O. Fifteenth prior lawsuit
   1. Harris v. Gipson, et al.
   2. E.D. Cal, Case No. 1:17-CV-00640
   3. Pending

P. Sixteenth prior lawsuit
   1. Harris v. Quillen, et al.
   2. E.D. Cal; Case No. 1:17-CV-00640
   3. Pending

## D. CAUSE OF ACTION

### CLAIM I

1. State the constitutional or other federal civil right that was violated: EIGHTH AMENDMENT RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT

2. **Claim I.** Identify the issue involved. Check **only one.** State additional issues in separate claims.
   - [ ] Basic necessities
   - [ ] Disciplinary proceedings
   - [x] Excessive force by an officer
   - [ ] Mail
   - [ ] Property
   - [ ] Threat to safety
   - [ ] Access to the court
   - [ ] Exercise of religion
   - [ ] Other: _____
   - [ ] Medical care
   - [ ] Retaliation

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   (1) At all times relevant to this complaint, each individual was acting under the color of state law.

   (2) At all times relevant to this complaint, each individual was acting in the scope of their employment

   (3) Each and all defendants, jointly and severally, are being sued in their individual capacities

   (4) On 9/15/13, plaintiff was incarcerated in the custody of CSP-Corcoran and housed in segregation, the Security Housing Unit (SHU)

   (5) Defendants Martin, Bowechop and Hernandez worked in Plaintiff's housing unit.

   (6) Martin and Bowechop came to Plaintiffs cell to escort him to.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   _____
   _____
   _____

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  [x] Yes  [ ] No
   b. Did you submit a request for administrative relief on Claim I?  [x] Yes  [ ] No
   c. Did you appeal your request for relief on Claim I to the highest level?  [x] Yes  [ ] No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. ✱ SEE ATTACHED ADDITIONAL PAGE
   _____

**D. CLAIM 1; SUPPORTING FACTS (continued)**

the shower. Plaintiff put his hands through the foodport and Martin hand-cuffed him behind the back. She then signaled for the control booth to open his cell door and along with Bowechop, escorted plaintiff to the shower.

⑦ Martin secured Plaintiff inside the shower cell and then asked if he wanted a razor. He said "yeah" and Bowechop went to get it.

⑧ Martin had trouble getting Plaintiff's handcuffs off. She said, "shit," out of frustration. He said, "damn little mama you goin' leave me in 'cuffs" She said, "don't call me that." He said, "okay." She said, "did you hear me?" He said, "yeah, okay."

⑨ Martin grabbed the link of Plaintiff's handcuffs and signaled to the control booth to open the shower cell.

⑩ The control booth officer opened the shower cell and Martin and Bowechop

1. CLAIM 1; SUPPORTING FACTS (continued)

escorted Plaintiff back to his cell.

(11) Once the door closed, Plaintiff went and sat on his bunk. He then manuevered his handcuffs under his legs and to the front instead of behind him.

(12) Martin said, "are you going to give the cuffs back?" Plaintiff said, "are you going to give me my shower?"

(13) Martin closed the foodport and said, "keep them then" Bowechop took her pepperspray canister out and began shaking it.

(14) Bowechop went to the cart with the section's razors on it and announced to inmates on the tier, "no showers, thanks to cell #21." Martin and Bowechop left.

(15) About ten minutes later, Hernandez and Bowechop went back to Plaintiff's cell. Hernandez said, "you really want to do this. I'm going to be in

D. CLAIM 1; SUPPORTING FACTS (continued)

here everyday, give me the cuffs."

16) Plaintiff said," are you going to give me my shower?"

17) Hernandez said," the female staff said you were being inappropiate with her."

18) Plaintiff said, "she told me not to call her a name, I said 'okay'. That don't give y'all a reason to deny me my shower."

19) Bonechop told Hernandez, "come on lets just go up in there"

20) Hernandez mumbled something unintelligible and they walked away.

21) Plaintiff was secured in his cell, handcuffed and did not present a threat to staff.

22) Defendants could have avoided the entire situation by giving plaintiff

1. CLAIM 1: SUPPORTING FACTS (continued)

the shower he was entitled to and writing him a disciplinary report for inappropiate comments. Denial of shower is not a sanctioned form of discipline.

23) Furthermore, CDCR has promulgated a use of force policy to defuse these type of situations with use of force being a last resort and chemical agents preceding recourse to physical force. Department Operations Manual, Chapter 5, Article 2. (DOM)

24) If Defendants wanted to make a good faith effort to maintain or re-store discipline, they would have fol-lowed CDCR policy.

25) Since Plaintiff was in a place where he could be isolated, this was a controlled use of force situation. It required video recording, the presence of a licensed health care staff, Incident Commander (Lieutenant), and the First or Second Level Manager or Administrative Officer of the Day

1. CLAIM 1, SUPPORTING FACTS (continued)

(Captain, Associate Warden) DOM 51020.2.1

26) Defendants should have ordered Plaintiff to comply, advised him of the intent to use chemical agents and physical force if he didn't comply and gave him a cool down period of a reasonable length. DOM 51020

27) Such practices would have deprived Munoz, Landia, Zamora and Hernandez the opportunity to maliciously and sadistically inflict physical harm on Plaintiff and for Hernandez, Martin and Bowechop to be deliberately indifferent by having the opportunity and failing to intervene.

28) Rather, Munoz, Landia, Martin, Zamora, Hernandez and Bowechop conspired to physically brutalize Plaintiff.

29) Zamora was an officer that weighed about 300 pounds compared to the 165 pound Plaintiff. He

D. CLAIM 1; SUPPORTING FACTS (continued)

was not assigned to Plaintiff's hou-
sing unit.

(30) Upon information and belief,
Zamora had a history of assaul-
ting inmates and was used as an
enforcer.

(31) Upon information and belief, Munoz
and Candia utilized their positions
as supervisors to arrange Zamudio's
presence in Plaintiff's housing unit
for the purpose of assaulting him.

(32) About 15 minutes after Hernandez
and Bowechop left Plaintiff's cell
door, they came back with Candia,
Zamora, Martin-all in tow.

(33) Candia and Zamora stood at the
forefront. Candia told Plaintiff, "we
can do this the easy way or the
real hard way". Plaintiff just stood
there.

(34) Plaintiff's cell had two concrete

D. CLAIM 1; SUPPORTING FACTS (continued)

beds that were side by side. Candia yelled for the control booth officer to open, Plaintiff's cell door. Zamora bull-dozed into Plaintiff until he ended up face down, lying on top of the hand-cuffs, on his left bunk where he kept his legal material.

(35) Hernandez and Candia laid across Plaintiff's legs. Candia pulled Plaintiff's boxers down so that his butt was exposed.

(36) Candia said to Plaintiff something to the effect of your going to stop disrespecting my female staff.

(37) Zamora picked Plaintiff up and drove him into the wall, using his head as a battering ram. He landed on the right bunk where he slept,

(38) Zamora began choking Plaintiff's throat with one hand. Candia twice told Plaintiff, "everything okay, right?" He couldn't answer. Candia

D. CLAIM 1: SUPPORTING FACTS (continued)

said "I guess that's a yes"

(39) Candia began unhandcuffing Plaintiff's right hand. Zamora pulled his left hand behind his back and they re-handcuffed Plaintiff

(40) Hernandez was laying across Plaintiff's legs and twisting his ankles.

(41) Zamora pulled Plaintiff by the link of the handcuffs to the cell door. Defendants exited the cell. The control booth officer closed the door and they unhandcuffed him.

(42) Martin and Bowechop stood in the doorway spectating throughout this incident

(43) I had a knot on the right side of my forehead with a laceration above. Another laceration was located a couple of inches inside my hairline to the right of the middle of my head.

D. CLAIM 1; SUPPORTING FACTS (Continued)

(44) Plaintiff had pain in his left shoulder, particularly when he tried to lift his arm up. He also had pain in his right knee and ankle. Also a sore throat and pain swallowing.

(45) Four almost dime size drops of blood on the left shoulder of his T-shirt that was located on his bunk. A drop about six inches below on the left side of the back of his shirt

(46) A drop of blood looking like a bloody fingerprint was on a disciplinary report that layed on Plaintiff's right bunk. The left bunk where he kept his legal material was disheveled.

(47) During evening medication pass out, Plaintiff gave a healthcare request form to the regular licensed vocational nurse, an asian female. It described his injuries based on this excessive force.

(48) Hernandez served trays on the bottom tier at dinner and didn't feed Plaintiff.

D. CLAIM 1; SUPPORTING FACTS (continued)

49) ~~XXXXXXXXXXXXXX~~, On 9/17/13, in the mor-
ning, Plaintiff gave LVN Hernandez a
healthcare request form describing his
injuries from excessive force.

50) Plaintiff also gave Officer T. Gregory,
who was escorting LVN, an inmate request
complaining of excessive force and asking
for an investigation.

51) At about 10:00 a.m., Dr. Gill examined
Plaintiff's head injury at the clinic.

52) At about 1:00 p.m., Sgt. Peterson video-
taped Sgt. Lopez interviewing Plaintiff
about his excessive force complaint and
documenting the laceration and caked
up blood on the top of his head.

53) On 9/19/13, Martin wrote Plaintiff
a disciplinary report for willfully
delaying a peace officer on 9/15/13.
She claimed to have notified Sgt.
Candia that he was holding his cuffs
and that Hernandez and Bowechop went
to his cell to talk to him.

D. CLAIM 1; SUPPORTING FACTS (continued)

54 In order to cover up the excessive force, she falsely asserted that Hernandez talked Plaintiff into relinquishing his handcuffs.

55 On 9/19/13, Candia signed off on ~~this~~ this false report as the reviewing supervisor.

56 On 10/18/13, Lt. Silva systematically found Plaintiff guilty of Martin's disciplinary report and punished him with 90 days loss of special purchases, vendor packages, entertainment appliances and 10 days loss of yard.

57 On 11/5/13, Chief Disciplinary Officer, Associate Warden J. Vanderpoel overturned Plaintiff's finding of guilt on Martin's disciplinary report based on due process violations and dismissed it.

58 Upon information and belief, Bowechop corroborated Plaintiff's excessive force complaint - after the fact.

1. CLAIM 1: SUPPORTING FACTS (continued)

59) Munoz, Martin, Zamora, Candia and Hernandez were all fired between 10/13/14 and 10/15/14 for their role in the excessive use of force against plaintiff on 9/15/13 and the cover up of it. See Munoz v. State Personnel Board #

60) On 10/26/15, Bowechop was fired.

61) On 3/15/16, Munoz was reinstated.

62) On 8/31/16, Martin returned to work after having her dismissal ~~●●●~~ changed to a 6 month salary reduction.

63) STATUTE OF LIMITATIONS

64) Plaintiff was exhausting his administrative remedies until at least 2/19/14 so his statute of limitations tolled until then. Brown v. Valoff, 422 F.3d 926, 943. Plaintiff is serving life with possibility of parole so his statute of limitations tolled 2 more years. Martinez v. Gomez, 137 F.3d 1124.

① CLAIM 1: ADMINISTRATIVE REMEDIES (continued)

① On 9/16/13, Plaintiff submitted an administrative appeal on this incident #CSPC-5-13-06647

② Plaintiff also submitted an inmate request to appeals coordinator requesting medical treatment and a videotaped interview

③ On 10/1/13, the appeals coordinator responded that a copy of Plaintiff's appeal to medical for an evaluation.

④ On 10/15/13, Plaintiff recieved a second level response that this appeal had been referred to the Investigative Services Unit for an investigation. However, he recieved a copy of his appeal back and not the original.

⑤ CDCR appeal rules provide inmates can submit a copy of an appeal with an explanation why the original is not available. CCR, Title 15, §3084.2

⑥ Plaintiff did that.

①. CLAIM 1: ADMINISTRATIVE REMEDIES (continued)

⑦ Although appeals coordinators have the discretion to request that a submitted copy is verified by staff, they do not have the discretion to reject a copy. (CCR, Title 15, §3084.2 (b)).

⑧ On 12/3/13, the third and final level of review screened out Plaintiff's appeal and directed him to sign a rights and responsibilities form and get his appeal stamped treat as original in red ink by the institutional appeals coordinator- claiming it was up to their determination whether or not to give Plaintiff a stamped copy. #1306164

⑨ On 12/15/13, Plaintiff resubmitted his appeal with a signed rights and responsibilities form.

⑩ On 1/13/14, the third level again screened out Plaintiff's appeal with directions to get it stamped treat as orginal

⑪ On 2/6/14, Plaintiff submitted his appeal with an inmate request to

1. CLAIM 1; ADMINISTRATIVE REMEDIES (continued)

the institutional appeals coordinator to get it stamped treat as original.

(2) On 2/12/14, the appeals coordinator refused to stamp Plaintiff's appeal-treat as original. Directing him to locate the original although he had already disclosed that he never recieved the original back.

(3) On 2/19/14, Plaintiff resubmitted his appeal to the third level with the appeals coordinator's refusal to stamp treat as original.

(4) Plaintiff never recieved his appeal nor a response back

(5) On 2/2/15, after about a year of not recieving a response, Plaintiff filed an appeal about his unanswered appeal. On 2/5/15, the appeals coordinator refused to process his appeal, claiming it was simply a request for information and then falsely asserted that his unanswered appeal had been cancelled on 10/24/13. # (SPC-6-15-00655

1. CLAIM 1: ADMINISTRATIVE REMEDIES (continued)

(6) On 2/25/15, Plaintiff wrote Internal Affairs to inquire into the status of his unanswered appeal. On 4/2/15, after it was forwarded to him, AW J. Vander Poel responded that the appeals office had no information on the matter and could not provide a status update.

(7) On 9/22/15, Plaintiff wrote Internal Affairs again to notify them of Vander Poel's ineffective response and inquire into his unanswered appeal.

(8) Since prison officials improperly screened out Plaintiff's appeal for not being stamped treat as original when regulations only required him to provide a copy and explanation why original was not available - which he did - his administrative remedies were effectively unavailable. Sapp v. Kimbrell, 623 F. 3d 813 (9th Cir. 2010).

## E. REQUEST FOR RELIEF

State the relief you are seeking:

1) Declare the acts described herein violated plaintiff's right under the Constitution and laws of the United States.
2) Enter judgement in favor of Plaintiff for nominal, compensatory and punitive damages as allowed by law against each defendant jointly and severally.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  12/25/17
DATE

_____
SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.